

FILED
SCRANTON

JUN 1 2 2001

PER _____
DEPUTY CLERK

① 

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY SANDERS,<br><br>  PETITIONER,<br><br>  vs.<br><br>SUSAN GERLINSKI, WARDEN<br>LOW SECURITY CORRECTIONAL<br>INSTITUTION-ALLENWOOD,<br><br>  RESPONDENT. | **1: CV01-1162**<br><br>CASE NO.: _____ |

FILED
SCRANTON

JUN 2 6 2001

PER _____
DEPUTY CLERK

## PETITION FOR WRIT OF HABEAS CORPUS

Comes now the Petitioner, Ricky Sanders, <u>pro se</u>, pursuant to
§ 2241, et. seq., 28 U.S.C. §§2.1 - 2.65, The Administrative Procedures
Act, 5 U.S.C. § 551, et. seq., and the Supreme Court rulings in
<u>Morrisey v. Brewer</u>, 408 US 471 (1972) and <u>Haines v. Kerner</u>, 404
US 519 (1972), and in support thereof states the following:

1.  In 1987, Petitioner was found guilty of possession with
intent to distribute P.C.P. in the District of Columbia and was
sentenced to a prison term of eight to twenty-five years.  In
1995, Petitioner was paroled to the sentence.

2.  On April 17, 1997, Petitioner was arrested for possession
with the intent to distribute heroin in the District of Columbia.
Petitioner pled guilty and was sentenced to a term of two to
six years on December 23, 1997.  See Exhibit A

3.  In July, 1998, Petitioner was transferred to LSCI Allenwood.

At this time, Petitioner received a Notice of Board Order from the Board of Parole of the District of Columbia.   The order was titled:  <u>Recall and Cancel the Order to Appear for a Revocation Hearing Without Prior Detention</u>.   See Exhibit B.

4.   In February, 1999, Petitioner was seen by U.S. Parole Commission Analyst Charlie Lyons for an initial hearing on the sentence of two to six years.   The notice of action issued stated: Deny Parole, Continue For A Rehearing.  See Exhibit C.

5.   In October, 2000, after the service of eighteen (18) months from the parole eligibility date of April 27, 1999, the detainer was not answered.   In the interim period, in respect to this detainer, Petitioner notified Case Manager Mark Renda of LSCI Allenwood (Exhibit D) requesting he contact the D.C. Parole Board requesting a transfer to an institution that would better serve the Petitioner's rehabilitation needs and to request a dispositional review.   This request was denied.

6.  On August 2, 1999, Mr. Renda telephonically spoke with Carol Fleming at the Board of Parole of the District of Columbia regarding the detainer.  Ms. Fleming advised that the detainer was issued and lodged on March 17, 1998, and that the Petitioner's status was turned over to the United States Parole Commission (USPC).  Ms. Fleming further stated that the detainer would stand until the Petitioner's new case was completed at which time it will be removed.

7.   On March 14, 2001, Petitioner saw the Parole Board and was granted parole to the detainer on June 17, 2001.  Petitioner has not been scheduled for a parole hearing, in defiance of § 2.47 and <u>Wilson v. U.S. Parole Commission</u>, 193 F. 3d 195 (3rd Cir. 1999). The Court in this case stated that "Fundamentally, the Parole

Commission must follow its own regulations, which have the force of law." Ibid, p. 200.

8.   Petitioner has been denied liberty interest by the failure of the Administrative Staff at LSCI Allenwood to follow the regulations to file for a Parole Hearing to take place for the Petitioner and by the USPO for its' failure to schedule such hearing.

DATED:  MAY 24, 2001                    RESPECTFULLY SUBMITTED,

                                        RICKY SANDERS
                                        ID # 02184-000
                                        LSCI ALLENWOOD
                                        PO BOX 1000
                                        WHITE DEER, PA 17887-1000

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKY SANDERS,                              :

     PETITIONER,                          :

     vs.                                  :          CASE NO.: _____

SUSAN GERLINSKI, WARDEN                     :
     LOW SECURITY CORRECTIONAL            :
     INSTITUTION—ALLENWOOD,               :
     RESPONDENT.                          :
                                     :

## MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS PETITION

The Fifth and Fourteenth Amendments prohibit the government from depriving persons of life, liberty or property without due process of law.  U.S. Constitution, Amendments V, XIV.  The Due Process Clauses are designed to protect the individual against arbitrary government action. Wolff v. McDonald, 418 U.S. 539, 558 (1974) citing Dent v. West Virginia, 129 U.S. 114, 123 (1989).

The threshold question in any due process claim is whether a protected liberty or property interest is involved.  Meachum v. Fano, 427 U.S. 215, 223-24 (1976).  Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (Analysis of due process questions involves two steps:  (1) whether a liberty or property interest is involved, and (2) whether procedural safeguards are constitutionally sufficient to protect against any unjustified deprivations.)

The District Court has jurisdiction of habeas corpus petition
filed by federal prisoners complaining of abuse of discretion on
part of parole board in considering release of prisoners; parole
board is an "authority" of the federal government within meaning
of Administrative Procedure Act, section 551, et. seq. and 701
seq. of Title 5, and petition for writ of habeas corpus is a
proper form proceeding for obtaining judicial review of parole
board decisions.  Tedder v. U.S. Board of Parole, 527 F. 2d
593, (9th Circuit 1975).

In this case, Petitioner's liberty has been deprived in
violation of the parole revocation procedures governing the
U.S. Parole Commission ("Commission") codified at 28 C.F.R.
§§§§ 2.49, 2.50, 2.52, and 2.75; the Supreme Court's ruling in
Morrissey v. Brewer, 408 US 471 (1972); and, the Due Process Clause
of the Fifth Amendment to the U.S. Constitution.  These violations
are clear, blatant and undisputable.

Being mindful of 28 C.F.R. § 2.47 set out the procedures governing
warrant placed as a detainer and dispositional review (A)(2), and (B)(iii).
2.47-01(1)(A), requires the responsible Regional Commissioner to respond to
offender's serving new sentence over which the U.S. Parole Commission has
jurisdiction.  The post release analyst should forward to the institution two
revocation packets with instruction to the Warden to schedule the parole for a
joint initial/dispositional revocation hearing within 120 days of committment
or as soon thereafter as practicable.  (See Exhibit F).  *See Exhibit I-1*

Exhibit C, Notice of Action From the U.S. Parole Commission, clearly states that the Petitioner was to have a rehearing in October, 2000, after the service of 18 months from the parole eligibility date of April 27, 1999. As you can see, the warrant placed as a detainer was not addressed in accordance with 28 C.F.R. § 2.47(A)(2) and (B)(iii) See Exhibit F. However, the rehearing schedule for October, 2000, was delayed until March, 2001, without explanation. See Exhibit H 1-2.

Most importantly, jurisdication has been delegation to the U.S. Parole Commission, which has refused to acknowledge the guideline set forth in § 2.47-01(c)(3). The hearing should be scheduled every 24months of either new sentence or if the original sentence is seven years or more; otherwise, such hearing scheduled every eighteen months. See Exhibit I-2.

Additionally, since the jurisdiction has been transferred to the Parole Commission, the Commission should have acknowledged the guideline set forth in 2.47-01(c) (See Exhibit I-2): If the prisoner has already had an initial hearing on the new federal sentence, he/she shall be sent a notice informing him that his case is being reopened. Under 28 C.F.R. § 2.28(c) for joint consideration of both the new federal sentence and the violator term. This hearing will follow the procedures for the combined initial/dispositional revocation hearing. With the resulting orders following the wording specified for joint initial dispositional hearings. 47-01 (C)(2) Hearing release guidelines will be computed pursuant to 28 C.F.R. § 2.20 and 2.21 and a recommendation made with

- 3 -

respect to (a) revocation (b) forefeiture of the street time
credit (c) commencement of the violation term (d) setting of a
presumptive release date.  Note:  at a joint initial/disposit-
ional hearing, this will concern both the new sentence and the
violator term.  The Commission may grant a reparole date nunc
pro of the circumstance warrant.  See Exhibit I-2.

However, the nature of due process, is not to deprive a person
of life, liberty or property without due process of law.  However,
jurisdiction is the most important issue  of this matter.  [A
government's general power to exercise authority of all persons
and things within its territory.]  So, as we apply the authority
of the U.S. Parole Commission to this matter.  Being prompt and
addressing the facts, Petitioner has been in the custody of Bureau
of Prison since June of 1998, as well as the jurisdiction of the
U.S. Parole Commission of October of 1998, the Warrant placed as
a detainer was turned over to U.S. Parole Commission.  See Exhibit
D.  However, 2.47.01(c)(2) hearing procedures advise the US Parole
Commission to apply 28 C.F.R. § 2.20 and 2.21.  See Exhibit I-2.
28 C.F.R. 2.20(B) Parole Guideline Statement of General Policy.
These guidelines indicate the customary range of time to be
served before release for various combinations of offense (severity)
and offender (parole prognosis) characteristics.  The time ranges
by the guidelines are established specifically for case good in-
stitutional adjustment and program progress 28 C.F.R. 2.21(2)(c)
and 2.47(E)(1) See Exhibit I-1:  A parole violator

- 4 -

whose parole is revoked shall be given credit for all time in
Federal, State or local confinement on a new offense for purposes
of satisfaction of reparole guidelines 2.20 and 2.21.   If Petitioner
may direct attention to the fact that I have been incarcerated
since April 17, 1997, to current date imposed on the Habeas Corpus
Petition.   This is a total of 49 months.   Therefore, applying the
Subchapter A - Heroin - and Opiate Offense 901, Distribution or
Possession with intent to distribute (G) 2F small scale (e.g.,
involving less than 5 grams of 100% pure heroin, or equivalent
amount), grade as Category Four (See Exhibit L).   In addition,
notes to Chapter Nine (4) (2FO weight, but not purity as available)
The following grading may be used:  Heroin, small scale=less than
28.35 grams as my salient factor, score as poor risk.   Exhibit M 1
& 2.   However, guideline range would put Petitioner in category
4, 34- 44.

   Pursuant to 28 C.F.R. § 2.52 which governs Revocation Decisions,
the parolee is afforded the opportunity to have the Commission consider
a range of options such as (1) restore the parolee to supervision
including where appropriate:  (i) reprimand; (ii) modification of
the parolee's conditions of release; (iii) referral to a residential
community treatment center for all or part of the remainder of
his original senetence; or, (2) revoke parole.

   Pursuant to the Parole Commission and Reorganization Act of
1976, Public Law 94-233, requires the Commission to:

...review and consider both the nature and circumstances of the offense and the history and characteristics of the prisoner. It is the view of the conferees that these two items are most significant in making equitable release determinations and are a viable basis, when considered together, for making other judgments.

18 U.S.C. § 4206, Parole Determination Criteria (Emphasis supplied).

A writ of habeas corpus is requested herein based on the failure and refusal of the Commission to abide by its' governing rules and regulations relative to parole revocation. "Fundamentally, the Parole Commission must follow its own regulations, which have the force of law." Wilson v. U.S. Parole Com'n, 193 F. 3d 195, 200 (3rd Cir. 1999) quoting United States ex rel Farese v. Luther, 953 F. 2d 49, 52 (3rd Cir. 1992). As shown in the acoompanying petitioner for issuance of a writ of habeas corpus, the Commission failed to conduct the parole revocation hearing in this case pursuant to the time limits and procedures mandated by 28 C.F.R. §§ 2.50 and 2.52. Resulting from this failure to abide by said procedures, Petitioner has been prejudiced as shown below.

Attached hereto as **Exhibit** O is a copy of a Washington Post article, dated December 8, 2000, relative to the Commission's action concerning Washington, D.C. (hereafter referred to as "D.C.") parole cases. As this Court will note, the Commission released 118 D.C. parolees charged with parole violations, all of an administrative nature such as petitioner and pursuant to the same statutory and decisional law governing federal parolees, without conducting parole revocation hearings due to the "inability to meet legal deadlines" for hearing cases involving scores of people who were arrested on parole violator warrants. "Facing

- 6 -

legal challenges from the D.C. Public Defender Service-which argued in Federal Court that people were being illegally detained-the Commission eased a backlog of cases by releasing many parolees who had been jailed for longer than 60 days."

Noteworthy, is the undisputed fact, that your Petitioner has been and is "illegally detained" longer than 60 days.

Michael J. Gaines, Chairman of the Commission, said officials took action "to comply with their own regulations as well as a 1972 Supreme Court Ruling that guarantees hearings" within a reasonable time after the parolee  is taken into custody." (Please see Exhibit  ).

The "1972 Supreme Court ruling" Mr. Gaines is quoted as "attempting to comply with" is Morrisey v. Brewer, 408 US 471 (1972) wherein the Court conluded that the petitioner had been denied due process relative to parole revocation and entered judgment for petitioner.

Morrisey contemplated a two-step parole revocation procedure. First, the parolee is entitled to a preliminary hearing in the nature of a probable cause hearing **within a reasonable time after** he has been **arrested** and detained.  Before the final decision on parole, the parolee, if he or she desires, is entitled to a full-scale hearing with a panolpy of procedural protections. (The parole revocation hearing procedural protections are enumerated in Morrisey, supra, at 487-89).

Deciding, arbitrarily and capriciously, to ignore and violate its rules and regulations governing parole revocation

- 7 -

procedures and provide the "full-scale [parole] hearing with a panolpy of procedural protections" required under <u>Morrisey</u>, the Commission selectively opted instead to forego same by requesting Petitioner to waive application of said procedures and the rights due thereunder. Petitioner declined to waive those due process rights and, as shown in the accompanying petition, in arguendo, <u>all</u> demonstrate conclusively that Petitioner sought to have his case reviewed and, as is his constitutional right to same in this regard, have alternative sanctions considered <u>before</u> the decision is rendered.

However, as is undisputable, the Commission, in requesting Petitioner to waive <u>all</u> due process procedural rights, essentially rendered its decision <u>before</u> conducting the revocation hearing which is over 60 days past the statutorily required 120-day period with which said hearing is required, by statute <u>and</u> decisional law to be conducted. As shown herein, the Commissions' regulations require the Commission to (1) conduct the revocation hearing at which time (2) review and considerationof both the nature and circumstances of the offense and (3) the history and characteristics of the prisoner <u>before</u> maing a final decision to revoke parole and require service of 18 months before even beginning a decision. This violation of due process was and continues to prejudice the Petitioner.

The Commissions' action relative to the Petitioner cannot stand legal scrutiny of a fair and unbiased nature as supported herein by the <u>Washington Post</u> article which shows that the Commission released 118 similarly-situated federal parole violators in its

- 8 -

attempt to comply with the precepts of <u>Morrisey v. Brewer</u>,
<u>supra</u>, and the Commission's governing parole revocation rules
and regulations.  The Commission should not be permitted to
selectively attempt to abide by its rules and regulations and
decisional law in some cases while violating the <u>same</u> rules,
regulations, procedures, and Supreme Court rulings in other
similarly-situated cases.

An element of the fair process due a parolee facing
revocation is that "[t]he revocation hearing must be tendered
within a reasonable time after the parolee is taken into custody."
<u>Morrisey</u>, <u>supra</u> at 488.  "A reasonable time would appear to be
no longer than the length of time delay is presently sanctioned
between the time a violation warrant is executed and a revocation
hearing is held.  As a general rule, three months appears to be
the maximum tolerated."  <u>Marchard v. Director, U.S. Probation
Office</u>, 421 F. 2d 331, 335 (n. 5) (1st Cir. 1970).

"A dispositional delay of more than three months was so
unfair that prejudice had to be presumed, with habeas corpus a
virtually automatic result...In such circumstances, the error
cannot be cured by subsequent proceedings, and the "unsatisfactorily
severe remedy of dismissal of the indictment [in cases involving
speedy trial violations].  <u>Barker v. Wingo</u>, 470 US 514, 522 (1972),
"or quashing the violation warrant in parole cases, is yet the
only possible remedy."  <u>Id</u>., accord, <u>Strunk v. United States</u>, 412
US 434 (1973).  See also <u>United States ex rel Sims v. Sielaff</u>, 563
F. 2d 821 (7th Cir. 1977).

- 9 -

"The essence of modern habeas corpus is to safeguard
the individual against unlawful custody."  As stated by Justice
Brennan for the Court in the watershed case of Fay v. Noia, 372
US 381, 438 (1963).  Habeas role is to serve "as an effective and
imperative remedy for detentions contrary to fundamental law."

Habeas is broad, Peyton v. Rowe, 391 US 54 (1968).  "The
statute does not deny the federal courts power to fashion approp-
riate relief other than immediate release."  Id, at 66.  Looking
to history, the Court went on:  "since 1874, the habeas corpus
statute has directed the courts to determine the facts and dispose
of the case summarily, 'as law and justice require.'"

In describing the duty of federal courts "to guard,
enforce and protect every  right granted or secured by the
Constitution of the United States," words recalled by the
Supreme Court in Zwickler v. Koota, 398 US 248, the Court said:

> We yet liek to believe that whenever the Federal Courts
> sit, human rights under the Federal Constitution are always
> a proper subject for adjudication...

In light of the cavalier and unconstitutional actions of
the Commission in denying Petitioner's due process rights secured
under the Fifth Amendment to the Constitution of the United States
which continue and cannot be cured by any subsequent proceedings
which would simply mirror the decision to revoke parole and at
the time of this filing, serve   months in prison, this Honorable
Court is requested to (1) order Respondents to show cause why the
requested writ of habeas corpus should not be granted; (2) schedule
an evidentiary hearing as soon as possible after Respondent's response

to the requested show cause order; (3) appoint counsel to represent
petitioner, a layman to the law; and (4) issue a writ of habeas
corpus as the only remedy appropriate to cure the excesses complained
of herein.

Respectfully submitted,

DATED:  MAY 25, 2001

RICKY SANDERS
REG. # 02184-000
LSCI ALLENWOOD
PO BOX 1000
WHITE DEER, PA 17887-1000

- 11 -

RETURN TO JAIL

DATE *12-23-97*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

United States of America
District of Columbia

vs.

*Bucky Sanders*

*CDF #18*

*Exhibit A*

*206-249*

*Exhibit A*

Case No. *F3297-97*
PDID No. *318-109*

## JUDGMENT AND COMMITMENT/PROBATION ORDER

*12-23-97*

The above-named defendant having entered a plea of ☐ Not Guilty ☑ Guilty to the Charge(s) of _____ *Count 2 Possession w/Intent to Distribute Heroin*

and having been found guilty by ☐ Jury ☑ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to *Count 2* ___ *years to 0 years in jail, thru institutional Drug treatment*

☐ MANDATORY MINIMUM term of _____ applies to the sentence imposed.
☐ MANDATORY MINIMUM term does not apply.
☐ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.
☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].
☑ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:
   ☐ Observe the general conditions of probation listed on the back of this order.
   ☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.
   ☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows:
   _____
   ☐ Restitution of $ _____ in monthly installments of $ _____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____
   ☐ _____

_____

Costs in the aggregate amount of $ _____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.
ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

*12-23-97*
Date

_____
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

*12-23-97*



*The Board of Parole*
*of the*
*District of Columbia*



## NOTICE OF BOARD ORDER

Order # 1 of 2

In reference to:

DCDC 206-249                    NAME  RICKY A SANDERS

DOB  02/11/1961                 SSN 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      LOCATION  D.C. JAIL

DOCKET  D9802-0097             CONSIDERATION TYPE  N:RAV

The District of Columbia Board of Parole issues the following **ORDER:**

  RECALL AND CANCEL THE ORDER TO APPEAR FOR A REVOCATION
  HEARING WITHOUT PRIOR DETENTION

Implementation of this Order shall include the following:
No Special Conditions or Instructions at this time.

Remarks:

  ILLEG POSS NARCOTIC DRUG
  FAILED TO OBEY ALL LAWS
  ILLEG USED CONTROL-DANGER SUBSTANCE

03/02/1998                                     — 8
—————————                        —————————————————
Date                                         Chairman
                                    on behalf of the Board of Parole

                    Seal

                                          [ Institution ]
**A TRUE COPY**                            MCQUEEN, R
TEST

03/02/99 01:52:19                    →          7175478345                    Page 001

**U.S. Department of Justice**                    **Notice of Action**
United States  Parole  Commission
5550 Friendship  Boulevard
Chevy Chase, Maryland  20815-7201

Name: SANDERS, Ricky

Register  Number:  02184-000              Institution:  Allenwood LSCI

In the case of the above-named,  the following parole action was ordered:

Deny parole.  Continue for a rehearing in October, 2000, after the service of 18 months from your parole
eligibility date of 04-27-1999.

THE ABOVE  DECISION  IS NOT APPEALABLE.

REASONS:

Base Point Score:  4
Total Point Score: 3

Under the guidelines for D.C. Code offenders at initial hearings, your Total Point Score includes a deduction
of 1 point for ordinary program achievement.

The guidelines for adult offenders at initial hearings indicate that parole should not be granted at this time.
After consideration  of all factors  and  information  presented,  a departure  from  the guidelines at this
consideration  is not warranted.

With your Base Point Score of 4, the rehearing guidelines indicate that you should be scheduled for a
rehearing  within 12-18 months  from  your parole eligibility date.  After  consideration  of all factors  and
information  presented, a departure from the rehearing guidelines at this consideration  is not warranted.

See the attached  sheet for your individual item points and explanations of the Salient Factor Score, Base
Point Score and Total Point Score. The tables at the bottom of the sheet present the parole and rehearing
guidelines.

Date: March 1, 1999                                            Clerk: frm

        BOP-ALF                    Page 1 of 2            SANDERS.218
R=93%                                                      03-02-99 02:12AM  F001

P-S148.055 INMATE REQUEST TO STAFF COFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: 8/10/99 |
| Mr. Renda /Case Manager | |
| FROM: Becky Sanders | REGISTER NO.: 02184-202 |
| WORK ASSIGNMENT: Computer | UNIT: Brady |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

_I felt that you address the D.C. Parole Board with a written statement. To the effect, of the warrant serving as a detainer. Considering the fact I will not benefit from my rehabilitazion with a custody level 4 since I while not be eligible for a camp, or a halfway house, I have no incident Report, A numberous E.F. Dec course and 30 hour drug education course and have attend E.S. And Meeting. I also have positive institution behavior. So with all due Respect pls will you notify the D.C. Parole Board for a deispositioned Review. Thank you_

(Do not write below this line)

DISPOSITION:  On August 2, 1999, I telephonically spoke with Carol Flemming, District of
Columbia, Board of Parole, regarding your District of Columbia Board of Parole Detainer.
She advised the warrant was issued and a detainer was lodged on March 19, 1998, and your
file was turned over to the United States Parole Commission (USPC). She stated the
detainer will stand as such until completed with the federal term wherein your case will
then be reviewed. I have previously made you aware of the above. The United States Parole
Commission also advised a hearing will be conducted upon your completion of your federal
term regarding your outstanding detainer.(refer to Inmate Request to Staff Member dated
May 11, 1999). You are currently a LOW security level inmate with IN custody and at this
time are inappropriate for placement in a Minimum level facility. I continue to encourage
your participation in educational programs. Your institutional adjustment is not the only
variable determining your appropriateness for placement in a minimum level facility. Your
request that the Bureau of Prisons to submit a letter for a review of your detainer is denied
as the detainer will be lodged until completion of your federal term. You are encouraged to
contact the parole commission to the address I previously provided.

| Signature Staff Member | Date |
| Marc A. Renda, Case Manager | August 12, 1999 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)        This form replaces BP-148.070 dated Oct 86
                                            and BP-S148.070 APR 94

05:13:01  11:56 FAX 301 492 6520        US PAROLE COMMISSION        002

•U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action    *exhibit E 1*

Name: SANDERS, Ricky                    Institution: Allenwood LSCI

Register Number: 02184-000              DCDC No: 206-249

In the case of the above-named, the following parole action was ordered:

Parole effective (June 17, 2001) after the service of 50 months to the parole violator detainer only.

NOTE: Pursuant to 28 C.F.R. §2.32, your parole effective date is contingent upon approval of your
release plan by the Commission. Your release plan will be investigated by the D.C. Court Services and
Offender Supervision Agency (CSOSA), which will submit a report to the Commission before a parole
certificate can be delivered.

REASONS:

Your previous Total Point Score was 3. With adjustments reflecting your institutional record since your
last hearing, your current Total Point Score is 2.

Under the guidelines for D.C. Code offenders at rehearings, your current Total Point Score includes 1 point
for ordinary program achievement since your least hearing.

The guidelines for adult offenders at rehearings indicate that parole should be granted at this time. After
consideration of all factors and information presented, a departure from the guidelines at this
consideration is not warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

See the attached sheet for an explanation of your individual item points and current Total Point Score. The
table at the bottom presents the guidelines.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies
may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    Williette Copeland
       D.C. Court Services & Offender Supervision Agency
       300 Indiana Avenue, N.W., Suite 2010
       Washington, D.C. 20001

May 09, 2001                          -1-                    Clerk:  VAH
SANDERS                                                      02184-000
BOP Allenwood LSCI
cc:

*Exhibit E.2*

## TOTAL POINT SCORE

| Your Pts | Total Point Score Item Explanations |
|---|---|

4    Base Point Score (calculated at your initial hearing)

3    Previous Total Point Score (calculated at your previous hearing)

0    IV – Negative Institutional Behavior (since your last hearing)
Negative institutional behavior involving: (1) assault upon a correctional staff member with bodily harm inflicted or threatened, (2) possession of a deadly weapon, (3) setting a fire so as to risk human life, (4) introduction of drugs for purposes of distribution, or (5) participating in a violent demonstration or riot = +0; Other negative institutional behavior = -0

-1    V – Program Achievement (since your last hearing)
Ordinary program achievement = -1, Superior program achievement = -2

2    Current Total Point Score (sum of Previous Total Point Score and points for IV and V above)

| Adult Parole/Supervision Guidelines | | | | Rehearing Guidelines | |
|---|---|---|---|---|---|
| Total Point Score | Initial Hearing | Rehearing | | Base Point Score | Months to Rehearing |
| 0 | Grant Parole Low Supv | Parole With Highest Level of Supervision | | 0-4 | 12-18 |
| 1 | Grant Parole High Supv | | | 5-8 | 18-24 |
| 2 | Grant Parole Highest Supv | | | 9 | 22-28 |
| 3 | Deny Parole | | | 10 | 26-32 |
| 4+ | | Deny Parole | | | |

May 09, 2001
SANDERS
BOP Allenwood LSCI
cc:

Clerk:    VAH
02184-000


Exhibit F

(b) If the prisoner is in U.S. Marshals' custody, the Marshal shall be notified by letter or teletype sign
by the Regional Commissioner that the prisoner may not be held in custody beyond the adjust
mandatory release date provided by the Bureau of Prisons. The analyst shall follow up to ensure rele
by such date.  (See 2.48-03(b)).

(c) The Commission shall take all feasible steps to ensure that the revocation decision is made
communicated to the Marshal's Service and/or Bureau of Prisons before the adjusted mandatory rele
date.

### §2.47  WARRANT PLACED AS A DETAINER AND DISPOSITIONAL REVIEW.

(a) When a parolee is serving a new sentence in a federal, state or local institution, a parole viola
warrant may be placed against him as a detainer.

(1) If the prisoner is serving a new sentence in a federal institution, a revocation hearing shall
scheduled within 120 days of notification of placement of the detainer, or as soon thereafter
practicable, provided the prisoner is eligible for and has applied for an initial hearing on the n
sentence, or is serving a new sentence of one year or less. In any other case, the detainer shall
reviewed on the record pursuant to paragraph (a)(2) of this section.

(2) If the prisoner is serving a new sentence in a state or local institution, the violation warrant shall
reviewed by the Regional Commissioner not later than 180 days following notification to the Commissi
of such placement. The parolee shall receive notice of the pending review, and shall be permitted
submit a written application containing information relative to the disposition of the warrant. He sh
also be notified of his right to request counsel under the provisions of §2.48(b) to assist him in completi
this written application.

(b) If the prisoner is serving a new federal sentence, the Regional Commissioner, following
dispositional record review, may:

(i) Pursuant to the general policy of the Commission, let the warrant stand as a detainer and order t
the revocation hearing be scheduled to coincide with the initial hearing on the new federal senten
or upon release from the new sentence, whichever comes first;

(ii) Withdraw the warrant, and either order reinstatement of the parolee to supervision upon release fr
confinement or close the case if the expiration date has passed.

(c) If the prisoner is serving a new state or local sentence, the Regional Commissioner, following
dispositional record review may:

(i) Withdraw the detainer and order reinstatement of the parolee to supervision upon release fr
custody, or close the case if the expiration date has passed.

(ii) Order a revocation hearing to be conducted by a hearing examiner or an official designated
the Regional Commissioner at the institution in which the parolee is confined.

(iii) Let the detainer stand and order further review at an appropriate time. If the warrant is
withdrawn and no revocation hearing is conducted while the prisoner is in state or local custody,
institutional revocation hearing shall be conducted after the prisoner's return to federal custody.

(d) Revocation hearings pursuant to this section shall be conducted in accordance with the provisio
governing institutional revocation hearings, except that a hearing conducted at a state or local faci
may be conducted by a hearing examiner, hearing examiner panel, or other official designated by t
Regional Commissioner. Following a revocation hearing conducted pursuant to this section, t
Commission may take any action specified in §2.52.

U.S. Department of Justice
United States Parole Commission

*EY G*
*Exhibit G*

Notice of Hearing-Parole Application
Representative and Disclosure Request

Date *AUGUST 11, 2000*

Name: *Ricky Sanders*

Register No: *02184-000*     Institution *LSCI ALLENWOOD*

INSTRUCTIONS: This form is to be furnished to and completed by every inmate prior to every scheduled hearing before the Parole Commission. It must be furnished at least 60 days in advance of the scheduled hearings unless such 60 day notice is waived by the inmate (see "1" below).

1. NOTICE OF HEARING: Provided you have applied for parole in the space below, you will be given a hearing by officials of the U.S. Parole Commission on the docket of parole hearings scheduled for _____ to *OCTOBER    2000*, 19___ .

IF THERE ARE LESS THAN 60 DAYS BETWEEN THE DATE OF THIS NOTICE AND YOUR HEARING, YOUR HEARING WILL BE POSTPONED UNTIL THE NEXT DOCKET OF PAROLE HEARINGS AT YOUR INSTITUTION *UNLESS* YOU INITIAL THE FOLLOWING WAIVER:

_____     I received this form less than 60 days from the date of my hearing. However, I hereby waive my right to 60 days
(Initials)     advance notice of the hearing time and notice of my disclosure rights, and I request to be heard as scheduled.

2. APPLICATION: I hereby apply for parole, or have previously applied and still wish to be paroled:

x *Ricky G Sanders*                                    *8/11/00*
        (Signature)                                        (Date)

3. WAIVER OF PAROLE/PAROLE HEARING:

_____ A. I wish to waive parole consideration at this time.
(Initials)

_____ B. I wish to waive my scheduled Statutory Interim Hearing and have not incurred any Institutional Disciplinary
(Initials)     Committee infractions since my last hearing.

_____ C. I wish to waive the parole effective date or presumptive parole date previously determined by the Commission. (NOTE:
(Initials)     *A previously waived parole date will be reinstated upon reapplication, provided no new adverse information exists in your case.*)

_____ D. I wish to waive mandatory parole.
(Initials)

NOTE:    1)  If you waive parole or a parole hearing, any subsequent application or reapplication must be submitted at least 60 days prior to the first day of the month in which hearings are conducted at the institution where you are then confined.

2)  Revocation hearings cannot be waived. Hearings under 28 CFR 2.28 (b-f) and rescission hearings can only be waived by waiver of the parole effective date or presumptive parole date previously determined by the Commission.

4. REPRESENTATIVE: At your hearing you may have a representative of your choice (*e.g. family member, friend, staff member, or attorney*), who will be permitted to make a statement on your behalf at the close of the hearing. The name of any representative willing and able to appear should be written in below. Arrangements for the appearance of a representative must be made through your case manager.

Name of Representative: *D.J. CARLSON, Unit Manager*

IF YOU DO NOT WISH A REPRESENTATIVE, INITIAL THE FOLLOWING WAIVER:

_____     I do not wish a representative at my hearing.
(Initials)

*Exhibit A-1*

and remain at liberty without violating the law; and

(3) In the opinion of the Commission, the prisoner's release is not incompatible with the welfare of society.

(b) It is the policy of the Commission with respect to District of Columbia Code offenders that the minimum term imposed by the sentencing court presumptively satisfies the need for punishment in respect to the crime of which the prisoner has been convicted, and that the responsibility of the Commission is to account for the degree and the seriousness of the risk that the release of the prisoner would entail. This responsibility is carried out by reference to the Salient Factor Score and the Point Assignment Table at Sec. 2.80. However, there may be exceptional cases in which the gravity of the offense is sufficient to warrant an upward departure from Sec. 2.80 and denial of parole.

Sec. 2.74  Decision of the Commission.

(a) Following each initial or subsequent hearing, the Commission shall render a decision granting or denying parole, and shall provide the prisoner with a notice of action that includes an explanation of the reasons for the decision. The decision shall ordinarily be issued within 21 days of the hearing, excluding weekends and holidays.

(b) Whenever a decision is rendered within the applicable guideline established in this subpart, it will be deemed a sufficient explanation of the Commission's decision for the notice of action to set forth how the guideline was calculated. If the decision is a departure from the guidelines, the notice of action shall include the reasons for such departure.

(c) Relevant issues of fact shall be resolved by the Commission in accordance with Sec. 2.19(c). All final parole decisions (granting, denying, or revoking parole) shall be based on the concurrence of two Commissioner votes, except that three Commissioner votes shall be required if the decision differs from the decision recommended by the examiner panel by more than six months. All other decisions may be based on a single Commissioner vote, except as expressly provided in these rules.

Sec. 2.75  Reconsideration proceedings.

(a) If the Commission denies parole, it shall establish an appropriate reconsideration date in accordance with the provisions of Sec. 2.80. The prisoner shall be given a rehearing during the month specified by the Commission, or on the docket of hearings immediately preceding that month if no docket of hearings is scheduled for the

*Exhibit #2*

month specified. If the prisoner's mandatory release date will occur before the reconsideration date deemed appropriate by the Commission pursuant to Sec. 2.80, the Commission may order that the prisoner be released by the expiration of his sentence less good time (``continue to expiration'').

(b) The first reconsideration date shall be calculated from the prisoner's eligibility date, except that in the case of a youth offender or any prisoner who has waived the initial hearing, the first reconsideration date shall be calculated from the date the initial hearing is held. In all cases, any subsequent reconsideration date shall be calculated from the date of the last hearing. In the case of a waiver or substantial delay in holding the initial hearing, the Commission may conduct nunc pro tunc a combined initial hearing and such rehearings as would otherwise have been held during the delay.

(c) Notwithstanding the provisions of paragraph (a), the Commission shall not set a reconsideration date in excess of five years from the date of the prisoner's last hearing, nor shall the Commission continue a prisoner to the expiration of his or her sentence if more than five years remains from the date of the last hearing until the prisoner's scheduled mandatory release. The scheduling of a reconsideration date does not imply that parole will be granted at such hearing.

(d) Prior to the parole reconsideration date, the Commission shall review the prisoner's record, including an institutional progress report which shall be submitted 60 days prior to the hearing. Based on its review of the record, the Commission may grant an effective date of parole without conducting the scheduled in-person hearing.

(e) Notwithstanding a previously established reconsideration date, the Commission may also reopen any case for a special reconsideration hearing, as provided in Sec. 2.28, upon the receipt of new and significant information concerning the prisoner.

Sec. 2.76  Reduction in minimum sentence.

(a) A prisoner who has served three (3) or more years of the minimum term of his or her sentence may request the Commission to file an application with the sentencing court for a reduction in the minimum term pursuant to D.C. Code 24-201c. The prisoner's request to the Commission shall be in writing and shall state the reasons that the prisoner believes such request should be granted. The Commission shall require the submission of a progress report before approving such a request.

(b) Approval of a prisoner's request under this section shall require the concurrence of a majority of the Commissioners holding office.



(e)(1) A parole violator whose parole is revoked shall be given credit for all time in federal, state, or local confinement on a new offense for purposes of satisfaction of the reparole guidelines at §2.20 and §2.21.

(2) However, it shall be the policy of the Commission that the revoked parolee's original sentence (which due to the new conviction, stopped running upon his last release from federal confinement on parole) again start to run only upon release from the confinement portion of the new sentence or the date of reparole granted pursuant to these rules, whichever comes first. This subsection does not apply to cases where, by law, the running of the original sentence is not interrupted by a new conviction (e.g., YCA; NARA; Mexican or Canadian treaty cases).

(f) If a Regional Commissioner determines that additional information is required in order to make a decision pursuant to paragraph (a)(2) of this section, he may schedule a dispositional hearing at the state or local institution where the parolee is confined to obtain such information. Such hearing may be conducted by a hearing examiner, hearing examiner panel, or other official designated by the Regional Commissioner. The parolee shall have notice of such hearing, be allowed to testify in his behalf, and have opportunity for counsel as provided in §2.48(b).

*Notes and Procedures*

2.47-01. *Parolees Incarcerated in Federal Institutions (and persons serving new federal sentences housed in state institutions).*

(a) *Lodging Warrant as a Detainer.*

(1) When a U.S. Probation Officer advises the Regional Office that a parolee has been sentenced to incarceration for a new federal offense (usually supported by a copy of a Judgment and Commitment Order) the Commission should issue a parole violator warrant or supplement a previously issued warrant to reflect the conviction.

(2) Where a warrant has been held in abeyance by the U.S. Probation Officer, the U.S. Probation Officer will return the warrant unexecuted to the Regional Office.

(3) In the event the institution designated for service of the new federal sentence is outside the region in which the warrant was issued, the Post Release Analyst will forward the unexecuted warrant and file to the Post Release Analyst in the region where the parolee is incarcerated.

(4) The Post Release Analyst will forward the unexecuted warrant with instructions to the Warden to place the warrant as a detainer.

(5) IN YCA, NARA, AND MEXICAN/CANADIAN TREATY CASES ONLY: The Warden shall be instructed to execute the warrant when the case is placed on the hearing docket.

(b) *Scheduling the Hearings.*

(1) *For offenders serving new sentences over which the U.S. Parole Commission has jurisdiction:*

(A) If the offender is eligible for a prompt initial hearing and applies for parole on the new sentence within approximately 120 days: The Post Release Analyst should forward to the institution two revocation packets with instructions to the Warden to schedule the parolee for a joint initial/dispositional revocation hearing within 120 days of commitment, or as soon thereafter as practicable. These instructions should indicate that if the prisoner waives initial hearing, or if the prisoner is scheduled for a joint initial/dispositional revocation hearing and subsequently waives the initial hearing, the Commission is to be notified immediately and the prisoner notified that this also constitutes waiver of the dispositional revocation

*Exhibit I 2*        *Exhibit I 2*

hearing. The case will then be processed under (1)(B) below.

(B) If the offender either waives 120 day parole consideration — OR — is serving a new federal sentence with a period of parole ineligibility of 10 years: Upon receipt of the detainer notice, the Post Release Analyst will send Form H-13 (Notice of Pending Dispositional Review) to the prisoner and the prisoner will be afforded a dispositional review under 2.47-02 of this section. If, following this review, the warrant remains as a detainer, the prisoner should be scheduled for a dispositional revocation hearing to coincide with the initial hearing on the new sentence, or upon mandatory release from the new sentence if application for parole is never made.

(C) If the prisoner has already had an initial hearing on the new federal sentence, he/she shall be sent a Notice informing him that his case is being reopened under 28 C.F.R. §2.28(c) for joint consideration of both the new federal sentence and the violator term. This hearing will follow the procedures for the combined initial/dispositional revocation hearing, with the resulting orders following the wording specified for joint initial/ dispositional hearings.

(c) *Hearing Procedures.*

(1) Both combined dispositional revocation/initial hearings and dispositional revocation hearings in federal custody will be conducted under the procedures governing institutional revocation hearings (see 28 C.F.R. §2.50); except that if the prisoner requests a representative in addition to legal counsel at a combined hearing, the representative shall be considered a voluntary witness.

(2) Release guidelines will be computed pursuant to 28 C.F.R §2.20 and §2.21, and a recommendation made with respect to:  (A) revocation; (B) forfeiture of street time credit; (C) commencement of the violator term; (D) setting of a presumptive release date. NOTE: At a joint initial/dispositional hearing this will concern both the new sentence and the violator term.  NOTE:  The Commission may grant a reparole date nunc pro tunc if the circumstances warrant.

(3) Interim hearings should be scheduled every 24 months if either the new sentence or the original sentence is seven years or more; otherwise, such hearings should be scheduled every eighteen months.

§ 2.47-02.    *Parolees Incarcerated in State/Local Institutions and Parolees Incarcerated in Federal Institutions Serving CCCA or Other Non-Parolable Sentences.*

(a) *Lodging Warrant as Detainer.*

(1) Once the U.S. Probation Officer advises the Regional Office that the parolee has been sentenced to imprisonment for a new state/local crime or has received a CCCA or other non-parolable sentence (usually supported by a copy of the Judgment and Commitment Order), the Commission should issue a parole violator warrant or supplement a previously issued warrant to state the new conviction. The Regional Office will forward the warrant to the U.S. Marshal in the district where the parolee will serve the new state/local sentence, with instructions to place the warrant as a detainer. If the parolee is serving a new CCCA or other non-parolable sentence, the Regional Office will forward the warrant to the designated institution with instructions to place the warrant as a detainer. NOTE: These procedures would also apply to a parolee serving a state term as a probation/parole violator, if the violation behavior occurred while also on federal parole.

(2) Where a warrant was issued prior to notice of the new conviction and the parolee is incarcerated outside the issuing region, the U.S. Marshal in possession of the warrant will forward it unexecuted to the U.S. Marshal where the parolee is incarcerated on the new sentence, so that it may be placed as a detainer at the state/local or federal institution. The U.S. Marshal then prepares the detainer notice and sends a copy of the notice to the issuing Regional Office. This office retains jurisdiction over the parolee's case until after the first dispositional review, after which the file should be sent to attention of the

Exhibit J

b) Therefore, information submitted to the Commission which conflicts with the presentence report, or any other government report, must be weighed by the Commission along with the report. The Commission is then to resolve the conflicting versions of the facts by the preponderance of evidence standard; that is, decide which version of the facts best accords with reason and probability. Judging the credibility of the source of the information naturally is part of the fact finding process. The prisoner, of course, may have an interest in having the facts distorted to show him to be less culpable than he really is. On the other hand, the presentence report writer, who must depend on investigative reports, may have misinterpreted the investigative reports or confused the facts of a complicated case. These possibilities must be weighed in each individual case.

(c) Where the hearing examiner concludes that the description of the offense reported in the presentence report or Form 792 is to be believed, the examiner should, when informing the prisoner of the recommendation, explain that the finding is based upon the information before the examiner. The examiner may then tell the prisoner that if the prisoner obtains further significant information, such as a correction from the sentencing court or probation officer, he may send it to the regional office for consideration of a reopening of the case.

§ 2.19-05.  Information for Decision-Making.
(a) If the presentence report is not clear as to the data needed to establish the correct guidelines, the U.S. Probation Office that prepared the report should be contacted. Where it is determined that additional information concerning the offense behavior is needed, Form USA-792 may be requested (see Sample Letter at Appendix 4(C)). Modifications to that sample letter may be made where warranted (e.g., where a report has previously been provided and additional information is required). Note also that, in drug offenses, the DEA regional office where the prosecution occurred may be a useful source of information.

(b) Establishing the correct guidelines and making objective and fair decisions are dependent upon having adequate information. Careful attention, particularly at the pre-hearing stage, will enable the securing of additional information where appropriate, and enhance the quality and fairness of our work.

§2.20  PAROLING POLICY GUIDELINES: STATEMENT OF GENERAL POLICY.

(a) To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration, the United States Parole Commission has adopted guidelines for parole release consideration.

(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress.

(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.

(d) The guidelines contain instructions for the rating of certain offense behaviors. However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

(e) An evaluation sheet containing a "salient factor score" serves as an aid in determining the parole prognosis (potential risk of parole violation). However, where circumstances warrant, clinical evaluation of risk may override this predictive aid.

(f) Guidelines for reparole consideration are set forth at §2.21.



appropriate unwarranted leniency on the part of the Commission regarding codefendant A. The decision for codefendant A is to be made pursuant to applicable Commission standards.

Example 6: Codefendant A receives a 5 year sentence, codefendant B receives a 2 year sentence, and codefendant C is placed on probation. The reason for the differences in sentences is not clear. The guideline range for all cases is 24-36 months. That one or more codefendants may have received unwarranted leniency by court action (resulting in a mandatory release date below the applicable guideline range or no imprisonment at all) does not warrant compounding such action by unwarranted leniency on the part of the Commission regarding codefendant A. The decision for codefendant A is to be made pursuant to applicable Commission standards.

Example 7: Three codefendants appear equally culpable, have similar salient factor scores, have identical sentences, and appear to have no other relevant differences. Significantly different decisions by the Commission in such cases constitute unwarranted disparity and are to be avoided. Note: if it appears that the Commission has erroneously granted unwarranted leniency to one codefendant, it is not appropriate to compound such error by providing unwarranted leniency to other codefendant cases.

§ 2.20-10. *Military Prisoners.* In applying the guidelines to military prisoners, examiners shall thoroughly examine the details of the offense to determine if case-specific factors pertaining to special military circumstances surrounding the crime justify placing the offender at the top or above the guidelines, such as: drug distribution on a ship or near weaponry which endangers the lives of others or the mission; and/or any other offense which diminishes discipline and morale of the armed services.

Examples: The offense created a far greater threat to public safety and to the readiness of our military forces than indicated by a simple accounting of the weight of the drugs involved because it was committed in an inherently hazardous environment where mutual trust, physical fitness and mental alertness are prerequisites for success or survival, for example; this offender was distributing "crack" cocaine to aviation jet mechanics, technicians and other members of his anti-submarine squadron thus jeopardizing safe aircraft operations.

The offense involved the theft of property from members of the offender's own unit which weaken the bonds of mutual trust and support which are essential to unit integrity and distract unit members from their primary goal of combat readiness.

The victim of the crime was (the offender's superior in the chain of command) (a member of the offender's unit) ( a family member of a member of the offender's unit). Crimes against members of the offender's immediate military family have significant adverse impact on unit training and operational readiness irrespective of the actual scope of the crime.

### §2.21   REPAROLE CONSIDERATION GUIDELINES.

(a)(1) If revocation is based upon administrative violation(s) only, grade the behavior as if a Category One offense under §2.20.

(2)  If a finding is made that the prisoner has engaged in behavior constituting new criminal conduct, the appropriate severity rating for the new criminal behavior shall be calculated. New criminal conduct may be determined either by a new federal, state, or local conviction or by an independent finding by the Commission at revocation hearing. As violations may be for state or local offenses, the appropriate severity level may be determined by analogy with listed federal offense behaviors.

(b)  The guidelines for parole consideration specified at 28 C.F.R. §2.20 shall then be applied with the salient factor score recalculated. The conviction and commitment from which the offender was released shall be counted as a prior conviction and commitment.

Exhibit 142

(c) Time served on a new state or federal sentence shall be counted as time in custody for reparole guideline purposes. This does not affect the computation of the expiration date of the violator term as provided by Sections 2.47(e) and 2.52(c) and (d).

(d) The above are merely guidelines. A decision outside these guidelines (either above or below) may be made when circumstances warrant.

### Notes and Procedures

■ 2.21-01. *Administrative Violations.* The Commission has a range of sanctions available for dealing with administrative parole violations: reprimand, special conditions (e.g., a CCC placement), and revocation. The Commission preference is to use reimprisonment as a last resort, i.e., when other sanctions have been unsuccessfully tried or are plainly inappropriate. Note: Where there are administrative violations and new criminal conduct, the new criminal conduct controls. Do not consider administrative violations under the multiple separate offense procedure.

■ 2.21-02. *Miscellaneous Offenses.* Common offenses involving parole violators that are graded as Category One (under §2.20 Chapter Twelve) include driving while under the influence/ while impaired and possession of weapons other than firearms (e.g., possession of a switchblade knife).

■ 2.21-03. *Possession of a Weapon by a Parolee.* Possession of a firearm by a parolee will usually constitute new criminal conduct (the Federal Gun Control Act of 1968 generally prohibits persons convicted of felonies from possessing firearms, although there are certain limited exceptions: for example, this Act does not apply to persons adjudicated under the Federal Juvenile Delinquency Act). However, there may be cases in which possession of a weapon does not constitute new criminal conduct but is still a violation of the conditions of parole (e.g., possession of weapons other than firearms). For such cases, the administrative violation category of the reparole guidelines will apply.

■ 2.21-04. *Escape by Parolee from State Custody.* Occasionally, a prisoner will be paroled to a state sentence and will subsequently escape. For guideline purposes, apply the rescission guidelines (28 C.F.R. §2.36) as if the escape had been from a federal sentence.

### ▓ §2.22  COMMUNICATION WITH THE COMMISSION.

Attorneys, relatives, or interested parties wishing a personal interview to discuss a specific case with a representative of the Commission must submit a written request to the appropriate office setting forth the nature of the information to be discussed.

Such interview may be conducted by a Commissioner or assigned staff and a written summary of each such interview shall be prepared and placed in the prisoner's file.

### Notes and Procedures

■ 2.22-01. *Review and Referral of Correspondence.* Correspondence from prisoners or their relatives, friends or others is reviewed by an analyst and a reply, if appropriate, is made to the writer by the analyst. If the content of the correspondence is deemed of sufficient importance to warrant referral to the Regional Commissioner for possible initiation of Commission action, the analyst will do so. Referral will be made at the discretion of the analyst.

■ 2.22-02. *Correspondence from Member of Congress and Other High Officials.*
(a) All correspondence from a Member of Congress, a Federal Judge or other high government official regarding a prisoner is responded to by letter bearing the signature of the Regional Commissioner except as noted in (b) and (c) below. When copies of the correspondence are sent to the Central Office and one or more Regional Offices, the office receiving the original will answer. Copies

*Exhibit K3*

justifications for exceptions to the guidelines, subsequent administrative review by the National Appeals Board will be facilitated and there will be more uniformity and greater precision in the grant or denial of parole.

If the decisions to go above or below parole guidelines are frequent, the Commission should reevaluate its guidelines.

■ 2.20-02.   *Completion of the Guidelines.*   The applicable guideline evaluation worksheet shall be completed at all initial, revocation, and rescission hearings. It will be referred to in the summary at all subsequent hearings.   In each case, the examiner shall review the guidelines and, prior to making a recommendation, shall consider whether there is 'good cause' for a decision outside the guidelines, or whether a decision within the guidelines is appropriate.

■ 2.20-03.   *Calculating Time in Custody.*   Time in custody means only time in actual physical custody. Time on probation does not count as time in custody.  Nor does time on escape status count. Moreover, a sentence for contempt of court interrupts the running of the federal criminal sentence. Thus, any time spent as a result of a sentence of civil contempt is not counted in calculating time in custody.

Assessing time credit against the Parole Commission guidelines for behavior reflected in non-parolable sentences.

*A.  Original Parole Consideration.*

(1) Calculate the number of months in actual physical custody on the present federal sentence(s). Include jail time credit.  If the subject was received directly from state custody, where he was serving time on state charges only, count only the time since the federal sentence began.  If a subject has been in state custody for a substantial period, this may be considered in determining whether a decision below the guidelines is warranted.  However, it should not be counted as time in custody for purposes of guideline calculation.

(2) Credit is given towards the guidelines for any time spent in confinement on any offense considered in assessing offense severity.

*B.  Non-Parolable Federal Sentences.*  Credit is given towards the guidelines for any time to be served on a non-parolable federal sentence if the behavior to which the non-parolable sentence refers is considered in assessing the guidelines.  The Notice of Action would therefore state that the prisoner is continued to a date that will require a total service of ___ months in combination with a consecutive sentence requiring ___ months in custody.  If the consecutive sentence is subsequently vacated or modified by the sentencing court, the Commission will reopen the case to reconstruct its original plan by setting a new release date.

*C.  Probation Revocation Cases.*  Credit any time spent in actual physical custody (federal or state) for any offense considered in assessing offense severity.  If a prisoner is received as a probation violator from a split sentence, also credit the months spent in federal custody prior to being placed on probation.

*D.  Parole Violators (Reparole Consideration).*  In reparole guideline cases, count as time in custody any time spent in actual physical custody (whether state or federal) as a result of the actions leading to parole violation. (Example:  A parolee is convicted of a state charge of forgery and spends 10 months in state custody; he is in federal custody an additional 2 months at the time of his revocation hearing. Time in custody for reparole guideline purposes is 10 + 2 = 12 months.)

■ 2.20-04.   *Offense Severity Rating.*  In applying the guidelines, the offense severity rating shall reflect the overall circumstances of the present offense behavior.  Select the offense rating appropriate to the actual offense behavior that occurred.  The severity rating must be explained on the Notice of Action Worksheet (in the space provided) by a brief summary of the specific facts that justified the rating.  28

*exhibit A*

## CHAPTER NINE - OFFENSES INVOLVING ILLICIT DRUGS

SUBCHAPTER A - HEROIN AND OPIATE* OFFENSES

901   Distribution or Possession with Intent to Distribute
    (a) If extremely large scale (e.g., involving 3 kilograms or more of 100% pure heroin, or equivalent amount), grade as Category Eight (except as noted in (c) below);
    (b) If very large scale (e.g., involving 1 kilogram but less than 3 kilograms of 100% pure heroin, or equivalent amount), grade as Category Seven (except as noted in (c) below);
    (c) Where the Commission finds that the offender had only a peripheral role*, grade conduct under (a) or (b) as Category Six;
    (d) If large scale (e.g., involving 50-999 grams of 100% pure heroin, or equivalent amount), grade as Category Six (except as noted in (e) below);
    (e) Where the Commission finds that the offender had only a peripheral role*, grade conduct under (d) as Category Five;
    (f) If medium scale (e.g., involving 5-49 grams of 100% pure heroin, or equivalent amount), grade as Category Five;
    (g) If small scale (e.g., involving less than 5 grams of 100% pure heroin, or equivalent amount), grade as Category Four.

902   Simple Possession
    Category One.
    ((Notes and Procedures. (1) The following list contains drugs classified as opiates/synthetic opiate substances (21 C.F.R. §1308):

Acetorphine
Acetyldihydrocodeine
Acetylmethadol
Allylprodine
Alphacetylmethadol
Alphameprodine
Alphamethadol
Alpha-methylfentanyl
  Propionanilide
Alphaprodine
Anileridine
Benzethidine
Benzylmorphine
Betacetylmethadol
Betameprodine
Betamethadol
Betaprodine
Bezitramide
Clonitazene
Codeine
Codeine Methylbromide
Codeine-N-Oxide
Cyprenorphine
Desomorphine
Dextromoramide
Dextropropoxyphene
(Bulk non-dosage form)

Etonitazene
Etorphine
Etorphine hydrochloride
Etoxeridine
Fentanyl
Furethidine
Heroin
Hydrocodone
Hydromorphinol
Hydromorphone
Hydroxypethidine
Isomethadone
Ketobemidone
Levomethorphan
Levomoramide
Levophenacylmorphan
Levorphanol
Metazocine
Methadone
Methadone-Intermediate,
  4-cyano-2-dimethylamino-
  4, 4-diphenyl butane
Methyldesorphine
Methyldihydromorphine
Metopon
Morpheridine
Morphine

Normorphine
Norpipanone
Opium
  Raw Opium
  Opium Extracts
  Opium Fluid Extracts
  Powdered Opium
  Granulated Opium
  Tincture of Opium
Oxycodone
Oxymorphone
Pethidine
  (meperidine)
Pethidine-Intermediate-
  4-cyano-1-methyl-4-
  phenylpiperidine
Pethidine-Intermediate-B,
  ethyl-4-phenylpiperidine-4-
  carboxylate
Pethidine-Intermediate-C, 1-
  methyl-4-phenylpiperidine-
  4-carboxylic acid
Phenadoxone
Phenampromide
Phenazocine
Phenomorphan
Phenoperidine

---

*Terms marked by an asterisk are defined in Chapter Thirteen.


Exhibit M 1

= 10,000 milligrams of pure amphetamine (conversion to pure amphetamine); 10,000 milligrams /
10 milligrams per dose = 1,000 doses (division by the number of milligrams per dose). In this
example, the bulk quantity would convert to 1,000 doses of amphetamine.))

-- NOTES TO CHAPTER NINE
    (1) Grade manufacture of synthetic illicit drugs as listed above, but not less than Category Five.
        ((*Notes and Procedures.* Grade manufacture of synthetic illicit drugs according to the amount
        actually manufactured, but not less than Category Five.  Note: because of the variety of
        chemical processes that may be used and the differential in skill of the individuals involved,
        estimates as to how much a laboratory could produce in the future from materials at hand
        may vary widely and, thus, are not used in assessing the severity rating.))
    (2) 'Equivalent amounts' for the cocaine and opiate categories may be computed as follows: 1
        gram of 100% pure is equivalent to 2 grams of 50% pure and 10 grams of 10% pure, etc.
    (3) Grade unlawful possession or distribution of precursors of illicit drugs as Category Five (i.e.,
        aiding and abetting the manufacture of synthetic illicit drugs).
    (4) If weight, but not purity is available, the following grading may be used:

|  |  |
|---|---|
| **Heroin** | |
| Extremely large scale | 6 Kilograms or more |
| Very large scale | 2-5.99 kilograms |
| Large scale | 200 gms.-1.99 kilograms |
| Medium scale | 28.35-199.99 gms. |
| Small scale | Less than 28.35 gms. |
| | |
| **Cocaine** | |
| Extremely large scale | 18.75 kilograms or more |
| Very large scale | 6.25-18.74 kilograms |
| Large scale | 1.25-6.24 kilograms |
| Medium scale | 200 gms.-1.24 kilograms |
| Small scale | 20 gms.-199.99 gms. |
| Very small scale | 4 gms.-19.99 gms. |
| Extremely small scale | Less than 4 gms. |

((*Notes and Procedures.* Drug Offense Severity Calculations.
(a) Opiate/cocaine offenses are normally graded according to the quantity/ purity of the drug
involved.  Marijuana/hashish offenses are normally graded by bulk quantity.  Other illicit drug
offenses are normally graded by the number of doses.

(b) If (and only if) the above information is not available, it may be possible to determine the
appropriate severity rating from other information in the file (see (g)).

(c) The severity of drug offenses is to be classified by scale.  In some cases, the drugs actually
confiscated may not accurately reflect the scale of the offense.  For example, convincing
evidence of negotiations and transactions of large quantities of drugs over a long period of time
may be a more appropriate basis for rating the scale of the drug offense than weight/purity if the
evidence shows that only one of many shipments was actually confiscated by authorities.  Any
evidence used to assess the offense severity must meet the preponderance standard, and the
facts relied upon must be noted specifically on the Notice of Action.

(d) *Measurement Conversion Chart*

    1 ounce = 28.35 grams        1 quart = .95 liters

---

*Terms marked by an asterisk are defined in Chapter Thirteen.

*Exhibit M2*

## GUIDELINES FOR DECISION-MAKING
(Guidelines for Decision-Making, Customary Total Time
to be Served before Release (including jail time))

| OFFENSE CHARACTERISTICS: | OFFENDER CHARACTERISTICS: Parole Prognosis (Salient Factor Score 1981) | | | |
|---|---|---|---|---|
| Severity of Offense Behavior | Very Good (10-8) | Good (7-6) | Fair (5-4) | Poor (3-0) |
| Category One | Guideline Range | | | |
| | <=4 months | <=8 months | 8-12 months | 12-16 months |
| Category Two | Guideline Range | | | |
| | <=6 months | <=10 months | 12-16 months | 16-22 months |
| Category Three | Guideline Range | | | |
| | <=10 months | 12-16 months | 18-24 months | 24-32 months |
| Category Four | Guideline Range | | | |
| | 12-18 months | 20-26 months | 26-34 months | 34-44 months |
| Category Five | Guideline Range | | | |
| | 24-36 months | 36-48 months | 48-60 months | 60-72 months |
| Category Six | Guideline Range | | | |
| | 40-52 months | 52-64 months | 64-78 months | 78-100 months |
| Category Seven | Guideline Range | | | |
| | 52-80 months | 64-92 months | 78-110 months | 100-148 months |
| Category Eight* | Guideline Range | | | |
| | 100+ months | 120+ months | 150+ months | 180+ months |

*Note: For Category Eight, no upper limits are specified due to the extreme variability of the cases within this category. For decisions exceeding the lower limit of the applicable guideline category BY MORE THAN 48 MONTHS, the pertinent aggravating case factors considered are to be specified in the reasons given (e.g, that a homicide was premeditated or committed during the course of another felony; or that extreme cruelty or brutality was demonstrated.) This procedure is intended to ensure that the prisoner

7000 - 0600 - 0627 - 1183 - 1996
Exhibit N-1

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons                        **PROGRESS REPORT**

LSCI, ALLENWOOD, PENNSYLVANIA                    DATE 08-11-2000

Inmate reviewed and/or received copy:

_____    6/11/00    _____
Inmate Signature               Date        Staff Signature

1. Type of Progress Report:

   Initial:_____    Statutory Interim: XXX    Pre-Release:_____
   Transfer:_____   Other (specify):_____   Biennial:_____

2. **Name:** SANDERS, RICKY A.   3. **Reg. No:** 02184-000  4. **Age (DOB):** 02-11-1961

5. **Present Security/Custody Level:**    LOW/IN

6. **Offense/Violator Offense:** D.C. Code-Possession With Intent to Distribute Heroin

7. **Sentence:** 2-6 Years

8. **Sentence Began:** 12-23-1997   9. **Months Served +**
                                       **Jail Credit:** 32 months + 240 Days JTC

10. **Days GCT/EGT:** 0 Days Awarded

11. **Days FSGT/WSGT/DGCT:** 0/0/0

12. **Tentative Release:** April 26, 2003 via Exp FT

13. **Last Commission Action/Date:** 03-01-1999 Deny Parole. Continue for a rehearing in October 2000, after the service of 18 months from your parole eligibility date of 04-27-1999.

14. **Detainers/Pending Charges:** D.C. Board of Parole-Parole Violation

15. **Codefendants:** Please refer to that section of the Presentence Investigation Report.

Distribution:   Inmate File
                U.S. Probation Office
                Parole Commission Regional Office (if applicable)
                Inmate

*Exhibit N-2*

PROGRESS REPORT - CONTINUED

COMMITTED NAME: SANDERS, RICKY        Reg. No.: 02184-000 Date: 08-11-2000

16.   INSTITUTIONAL ADJUSTMENT:

Mr. Sanders has maintained a positive relationship with institutional staff and his inmate peers. He is not considered to be a management problem.

A.   Program Plan: At Mr. Sanders latest Program Review it was noted that he was a Low security level inmate with IN custody. His unit team recommended participation in Adult Continuing Education Courses (ACE), recreational programming, Alcoholics Anonymous and Narcotics Anonymous counseling courses, Psychology Counseling Courses (Anger & Stress Management, Alternative Lifestyles, Positive Motivation), complete two (2) self help groups, and pre-release programming when appropriate.

A prior progress report dated September 1, 1998, while housed at this facility, reveals recreational and correctional counseling was recommended, GED programming, drug and alcohol programming, and participation in the Inmate Financial Responsibility Program (IFRP).

B.   Work Assignments: Records reveal Mr. Sanders has been assigned to the Carpentry Shop since July 8, 1998. He receives good to outstanding evaluations in all rating areas. Mr. Sanders is always willing to perform assigned duties and needs little supervision.

A prior progress report dated September 1, 1998, while housed at this facility re-affirms the above.

C.   Educational/Vocational Participation: Mr. Sanders completed the following educational courses: Business Comm I, Job Search Skills, Commercial Drivers License, ACE Real Estate English, and Typing. He is currently enrolled in Business Comm II.

D.   Counseling Programs: Mr. Sanders received two certificates for the completion of 15 hours of training for the Narcotics Anonymous Meetings on January 21, 2000, and May 12, 2000. He completed the Drug Education program.

E.   Incident Reports: Mr. Sanders has maintained a clear disciplinary record throughout his period of confinement.

F.   Institutional Movement: Mr. Sanders was designated to the Low Security Correctional Institution (LSCI) Allenwood, PA on June 19,1998, for service of his District of Columbia Superior Court sentence. There has been no further movement to date.

  

*Exhibit N3*

PROGRESS REPORT - CONTINUED

COMMITTED NAME: SANDERS, RICKY A.    Reg. No.: 02184-000 Date: 08-11-2000

B.  <u>Physical and Mental Health</u>: Mr. Sanders is currently on regular duty status. According to his Presentence Investigation Report, there was no indication of significant mental or emotional disorders; however, psychological evaluations completed while in the custody of D.C. Superior Court reveal exhibition of delusion. His current psychological status is considered "favorable". He stated he was in good health. There was indication of marijuana and cocaine abuse.

H.  <u>Progress on Financial Responsibility Plan</u>: Mr. Sanders completed payment of his court ordered financial obligations.

17. <u>RELEASE PLANNING</u>: Notifications required per 18 U.S.C. 4042(b) due to the offenders current conviction for a drug trafficking offense.

A.  <u>Residence</u>:          Live w/ Charlaine Robinson, Sister
                              2425 Alabama Ave, SE
                              Apt 101
                              Washington, DC    20020
                              (202) 889-2866

B.  <u>Employment</u>:        ACE Temporary Services
                              1000 Queen St.
                              Alexandria, VA
                              (703) 838-8900

C.  <u>U.S.P.O.</u>:          Richard A. Houck, Jr., Chief
                              United States Probation Officer
                              District of Columbia
                              3rd & Constitution Ave, NW
                              Washington, DC    20001-2866

                              Court Services and Offender Supervision Agency
                              District of Columbia
                              300 Indiana Avenue, NW
                              Room 2134
                              Washington, DC    20001

D.  <u>RPP Program</u>        It is anticipated Mr. Sanders will complete all phases of the RPP program prior to his release.

18. Dictated By: _____
                 Marc Renda, Case Manager
                 Brady Unit

19. Date Typed:    August 11, 2000 (mar)

20. Reviewed By: _____
             for D.J. Carlson, Unit Manager
                 Brady Unit

EXHIBIT

# At Least Two Freed Convicts Rearrested

PAROLEES, *From 31*

custody for new crimes, pointing out that the released convicts included numerous people on parole for violent offenses. But the D.C. Public Defender Service, which has been tracking the cases, said many of those let go were decent people who were arrested on old, technical parole violations and needlessly made to languish in jail for months.

Michael J. Gaines, chairman of the U.S. Parole Commission, said officials took action to comply with their own regulations as well as a 1972 Supreme Court ruling that guarantees hearings "within a reasonable time after the parolee is taken into custody."

"We realized, given the numbers, there was no way we could do hearings for those people in the time that they should have been done," Gaines said.

The troubles stemmed from continuing administrative failures in the District's transfer of key components of its criminal justice system to federal control.

In August, the U.S. Parole Commission took over responsibility for 3,500 D.C. parolees who had been under the supervision of the D.C. Parole Board. The commission's new duties included conducting revocation hearings for hundreds of people accused of violating terms of parole. Many were accused of technical violations, such as missing meetings with parole officers, failing drug tests or missing drug treatment sessions. Others faced parole revocation because they were accused of committing new crimes.

As part of the transition, the U.S. Marshals Service took on the task of executing arrest warrants. But the U.S. Parole Commission could not keep up.

Gaines said the D.C. Parole Board left a backlog of more than 200 cases awaiting hearings. On top of that, the Marshals Service kept apprehending more suspects.

"We've made a major effort to undo a problem we inherited," Gaines said.

Critics maintained that the Parole Commission failed to make adequate preparations, noting that it had known about its impending new duties for more than two years.

But Gaines said the Parole Commission did not anticipate such a high number of alleged parole violators and did not have the resources to step up the hearing process. Congress turned down its requests for more staff, and the commission has borrowed people from the Justice Department and other criminal justice agencies to get matters moving.

Since mid-September, the commission has been scheduling an average of 25 parole revocation hearings a week—not nearly enough to erase the backlog of cases.

Before approving the recent mass releases, Gaines said, officials carefully reviewed each case and chose to free only those suspects who were awaiting revocation hearings because of technical violations or low-level criminal charges, such as shoplifting.

Gaines said officials continued to detain people who were accused of committing violent crimes while on parole.

Some of those released in recent weeks were about to complete their time on parole and would no longer have been under supervision, he said. In addition, most of those released were put on intensive supervision, he added.

The Parole Commission has scheduled hearings for an additional 115 people who were deemed unfit for immediate release, Gaines said. The commission also has taken steps to keep pace with new cases, he said, and no more large-scale releases are planned.

The commission's difficulties have generated much discord.

The Marshals Service is unhappy, maintaining that it performed its job only to see the commission release, without so much as a hearing, 118 people who were tracked down.

"It's really an overwhelming situation," said William Bonk, who heads the marshals' warrant squad at U.S. District Court. "The cadre of people we're dealing with are repeat offenders. A lot of them have been through the graduate school of thuggery."

The two men who were rearrested are Gregory Norcome, 42, a paroled robber who

is accused of selling $10 worth of cocaine Dec. 1 to an undercover D.C. police officer, and Kirk Bartley, 36, a paroled drug offender accused of stabbing a man in the abdomen and back during an altercation on Nov. 7—three days after his release from jail.

But the list of those released also includes many others like Houston Douglas, 69, who was arrested Aug. 31 at his apartment in Northwest Washington for allegedly violating terms of his parole in 1983. Among other things, Douglas allegedly failed a drug test and skipped meetings with his parole officer on several occasions.

Douglas, who was on parole for a 1976 burglary conviction, is blind in one eye, has difficulty walking and has a tremor in his right arm. He said that he has stayed out of trouble for 12 years and that he had no idea that a warrant had been issued for his arrest. Officials released him Oct. 30 after the D.C. Public Defender Service took the issue to court.

"It really made me mad," Douglas said. "They came here with a 12-year-old warrant that was so old it had dust on it. . . . Somebody should pay me for the days in jail."

In court filings, the D.C. Public Defender Service maintained that Douglas is part of a large group that was illegally detained for months for minor alleged infractions.

The Public Defender Service filed two more court cases yesterday and issued a statement contending that "scores of additional people remain unlawfully jailed." Those locked up, public defenders said, include "people who are working jobs, supporting their families, and otherwise living productive and law-abiding lives." The Parole Commission devastated their lives without "cause, thought or meaningful review," they said.

One advocacy group has announced plans to demonstrate outside the commission's headquarters tomorrow. "They keep saying, 'We're new to this; we're behind in paperwork.' That's a two-year-old excuse, and we're impatient," said Pauline Sullivan, director of the D.C. chapter of Citizens United for Rehabilitation of Errants.

TABLE OF CONTENTS

EXHIBIT A            COURT ORDER COMMITMENT
EXHIBIT B            THE BOARD OF PAROLE OF THE DISTRICT OF COLUMBIA
EXHIBIT C            UNITED STATES PAROLE COMMISSION NOTICE OF
                     ACTION DATED MARCH 1, 1999
EXHIBIT D            INMATE REQUEST TO STAFF
EXHIBIT E 1&2        UNITED STATES PAROLE COMMISSION NOTICE OF ACTION
                     DATED MAY 9, 2001
EXHIBIT F            § 2.47, WARRANT PLACE AS A DETAINER AND
                     DISPOSITIONAL REVIEW
EXHIBIT G            NOTICE OF HEARING-PAROLE APPLICATION
EXHIBIT H 1 & 2      RECONSIDERATION PROCEEDINGS
EXHIBIT I 1 & 2      § 2.47-01(c)(3) FOR OFFENDERS SERVING NEW
                     SENTENCE OVER WHICH THE U.S. PAROLE COMMISSION
                     HAS JURISDICTION.
EXHIBIT J            PAROLE POLICY GUIDELNIES:  STATEMENT OF GENERAL
                     POLICY
EXHIBIT K 1 & 2&3    REPAROLE CONSIDERATION GUIDELINE
EXHIBIT L            DISTRIBUTION OR POSSESSION WITH INTENT TO DISTRIBUTE
EXHIBIT M 1 & 2      NOTE TO CHAPTER 9
EXHIBIT N 1 & 2&3    PROGRESS REPORT
EXHIBIT O            WASHINGTON POST ARTICLE DATED DECEMBER 8, 2000